MICHAEL SPAIGHT *vs.* EDWARD J. McGOVERN.

Pub. Stat. R. I. cap. 93, § 6, provides: "Any person may kill any dog that may suddenly assault him, or any person of his family or in his company, while, the person so assaulted is out of the inclosure of the owner or keeper of such dog."

*Held,* that the right to kill was not limited to the immediate time and place of the assault.

*Held,* further, that one bitten while attempting to separate two fighting dogs is not "suddenly assaulted," within the meaning of the statute.

PLAINTIFF'S petition for a new trial.

*December* 7, 1889. DURFEE, C. J. This is a petition for the new trial of an action which the plaintiff brought against the defendant for killing his dog. The action was brought and tried in the Court of Common Pleas. The defendant, on trial in that court, did not deny killing the dog, but set up in defence that the dog had previously attacked and bit him. He testified that, September 14, A. D. 1887, he was going through East Street in the city of Providence, in the early evening, with his own dog, a small spaniel, when the plaintiff's dog, a bull terrier larger than the spaniel, attacked it ; that he separated the two dogs, and held the plaintiff's dog until his own could get away; that he then let the plaintiff's dog go, whereupon said dog jumped at him and bit his hand quite severely. At the time this occurred the plaintiff's dog was kept for the plaintiff, at his request, by one Andrew T. Carroll at his, Carroll's, shop, near by. The defendant, after receiving the bite, went home, got a pistol, returned to Carroll's shop, where the dog then was, and shot it. The defendant contended that he had a right to shoot it under Pub. Stat. R. I. cap. 93, § 6, which provides that "any person may kill any dog that may suddenly assault him, or any person of his family or in his company, while the person so assaulted is out of the inclosure of the owner or keeper of such dog." The plaintiff did not seriously deny that the dog bit the defendant, but he submitted testimony to show that the dog did not bite him at the time and in the manner as the defendant testified. Carroll testified that he helped separate the dogs, and that the defendant got bitten in separating them ; that he took the plaintiff's dog by the collar while the two were engaged, and held it so until he got it into his shop and chained it there. So that it could not have jumped at the defendant and

bit him after the separation. Another witness of the occurrence testified that he did not see the plaintiff's dog spring at the defendant. The court ruled that the defendant had a right under the statute to kill the dog; that the dog had forfeited its life by biting him; that he had a right to go for his pistol, get it, return and shoot the dog; and that it did not matter, so far as the plaintiff was concerned, that the dog was in Carroll's shop when shot. The court then directed a verdict for the defendant. The plaintiff excepted, and now asks for a new trial for error in said rulings and direction.

The plaintiff contends that the defendant, if bitten as he testified, should have killed the dog instantly in order to have the protection of the statute. We see nothing in the statute which so limits the right to kill which is given by it. Men do not ordinarily, when they walk the streets, carry with them a weapon which would make it safe for them to attempt to kill a dog which had attacked them, especially if it were powerful and ferocious. The right given by the statute is given to any person, not only in case he is himself assaulted, but also in case any member of his family is assaulted. Suppose a child, on his way to or from school, is assaulted by an ugly dog and bitten. Is it reasonable to hold that in such a case the statute does not enable a father to kill the dog, unless he happens to be where he can do it instantly? It does not seem so to us. The statute, so construed, would scarcely go farther than the common law in any respect, and in some respects not so far. *Woolf* v. *Chalker*, 31 Conn. 121; *Credit* v. *Brown*, 10 Johns. Rep. 365; *Putnam* v. *Payne*, 13 Johns. Rep. 312; *Maxwell* v. *Palmerton*, 21 Wend. 407.

The plaintiff contends that, even if the defendant had a right to kill the dog, he had no right to enter Carroll's shop and kill it there, and he is therefore liable in this action. We do not think the argument is tenable. If it be meant, as we suppose it is, that the defendant committed a trespass on Carroll's shop by entering it and killing the dog there, he is liable to Carroll, not to the plaintiff, for it, and we do not see how the plaintiff can take advantage of it. If a boy, having committed some act of filial disobedience, should take refuge in a neighbor's house or barn, and his father, following, should administer the merited chastisement

there, we do not think the father would be any more liable to his son therefor than if he had administered it at home, whatever action his neighbor might have against him. Nor do we see that it helps the matter any for the plaintiff, that, when the dog was shot, Carroll was the keeper of it for him.

The plaintiff contends that the defendant fails to justify himself under the statute, because he was bitten in consequence of his interference between the two dogs to separate them. As we have seen, the testimony on this point was contradictory. According to the defendant's testimony, the conflict between the dogs had ceased, his own dog having run home, when he was bitten; the plaintiff's dog turning upon him to inflict the bite after he had let go its collar. If this was so, it seems to us that the defendant was " suddenly assaulted " within the statute. The plaintiff's testimony goes to show that the defendant received the bite while he was endeavoring to separate the dogs before their struggle was over. The defendant attempted to effect the separation with his hands, and a bite from one dog or the other would be so likely to occur that it might well have been anticipated as a probable result of the attempt. The question is, then, whether, if the defendant was bitten in such circumstances, he can be said to have been *suddenly* assaulted within the meaning of the statute. We think not. In such circumstances the bite may have been the result of the mutual animosity of the two dogs, or of one of them toward the other, without animosity toward the person receiving it. The suddenness of assault required by the statute would be wanting. At any rate, if there were circumstances which would bring the case within the statute, notwithstanding that the bite occurred from such an attempt, it would, in our opinion, be incumbent on the defendant to show them. We think, therefore, that, in view of the testimony given by the plaintiff's witnesses, the case should have been left, under proper instructions, to the jury, and that the court erred in peremptorily directing a verdict for the defendant.

To prevent any possible misapprehension, we will add that, in so deciding, our purpose is not to question in the least the defendant's right to interfere for the protection or rescue of his own dog, or to recover damages for injuries received while so interfering,

but only to determine, as best we can, the limit of his right under the statute to *kill* the offending dog.

*Petition granted. No costs.*

*William W. Douglas & Samuel T. Douglas*, for plaintiff.

*Francis Colwell, Walter H. Barney & Albert A. Baker*, for defendant.